Good morning your honors, William Capriola for Mr. Williams, petitioner. So in this case we know that what happened here is that the judge mistakenly told the jury just before the prosecutor's opening statement that the defendant had pleaded guilty. Nobody corrected it, a couple of people supposedly heard it, not the defense attorney, but the entire trial took place with the jury thinking that Mr. Williams had pleaded guilty. And we know this because the jury sent a note three or four minutes after they got into the jury room saying we as a group feel that we heard the judge say that the defendant had pleaded guilty. Is this true? The judge looked it up and said yes. So the question in this case is, you know, it's clearly error, and does it need to be? Did the state court find it was error? Yes. So the only question is whether it was prejudicial. No. Oh, sorry. I'm sorry. Sorry. The question is because the state court didn't find that it was constitutional error. They found that it was trial error. Well, that's not entirely true. And that's I guess what we need to decide. Yeah. But I didn't want to accept that because I think that's what's at issue here. Well, that's one of the things that the attorney general does say that. Sorry. And I don't think that's entirely so, though. And the reason is in the state court opinion, they make a statement saying that basically – I wish I could find it quickly. But, okay, what they say is this. Because it goes to my question, I guess what Judge Reinhardt, but I would word it just a little bit differently because it seems like you argue in your briefs that the constitutional error might be conceded. But it seems like, at least from my reading, but I want to give you a chance to argue otherwise, obviously that it's only conceded that the trial court erred, not that the error amounted to constitutional error. So could you speak to that? Yes. And there's a portion in the state court's opinion where they basically say that the defendant in this case is claiming that he was denied his due process right to a fair trial, his due process right to the presumption of innocence and his Sixth Amendment right to a fair trial, and claims that it requires reversal. And then they say, we agree it was error. They don't necessarily say it was federal constitutional error, but since that statement comes the line after they basically say what the defendant's claim is, they're saying the claim is of federal constitutional dimension. And they say, we agree there's error. And they say, however, we believe the error was cured and, therefore, was harmless. So I think when you read that passage in the opinion, it's clear that they're finding a federal constitutional error in the case. And that is in the excerpts of record. Or, I mean, I guess the way that the other way to read that is that we would apply Estelle that a jury instruction error violates due process if it so infected the entire trial that the resulting conviction violates the due process. Yes. And so I think what we have to determine, but this is my reading, and I just want to give you a chance to respond to it, is did the state court's decision that this violated a due process, was that contrary to established law, I guess? Well, if they've – are you saying that they did find it was violated due process or they didn't find it was? Well, they said that – but their whole determination was that we have to determine, at least from what I can tell, that the California court held that the trial court had erred by stating that Williams had pled guilty but fully cured the error. It seems like the court recognized that one juror was biased due to the error, but then held that because the misstatement was immediately followed by correct statements of presumption of innocence and all that he instructed, that the trial court instructed, that the trial court fully cured the error. And so it seems like we have to determine whether the trial court's misstatement was harmless error, that it was a harmless error, was not contrary to or an unreasonable application of federal law. Well, two things. Quickly on that, if we're just doing harmlessness, then it looks like the standard is you simply apply Brecht because Brecht is more – it's a tougher standard for us to meet. It basically encompasses the AEDPA plus the Chapman standard. But going back just a little bit to whether or not this is federal constitutional error and whether it's harmful, I think you have to say that this was definitely significant federal constitutional error, and it's not just because – it really has nothing to do with instructions because this was not an instruction. This was information the judge told the jury just before evidence opened. So we're not talking about an instruction. And what happened here is that the jury went through the entire trial thinking this. You cannot undo that. You are entitled to a jury during the receiving phase of the evidence who has a mindset that is impartial. And he didn't get that. He got a jury who was seeing everything through a lens thinking that the judge said this person is guilty. So it doesn't matter what you do afterwards. The fact remains he was harmed by this because you had a jury who 12 jurors are looking at this thinking, okay, this guy is guilty. Yeah, I was told the presumption of innocence and everything, but those aren't necessarily inconsistent. You have this information. You have a tainted jury. So the question is are you entitled to a clean jury at the receiving phase who is listening to the evidence? They didn't get that. I mean, do you agree what the trial court did here was extensive in terms of curing? I do agree that, yes. Do you agree that when the trial judge told them that good jurors would do one thing, say that good jurors would say they weren't influenced, bad jurors would be influenced? Yeah. Oh, yeah. Was that satisfactory? No, I don't think so. I think that basically put the kibosh on anybody else coming forward because jurors wouldn't do that. So it was a curative instruction, in your view, that did not help and, if anything, might have hurt. Yes. Yes. Yeah, I think you can see it two ways there. Yes. It was a curative instruction, but basically he was sending a message to the jury saying that, listen, if anybody went through the trial thinking these things, you were wrong and you shouldn't be doing that. Then did anybody do that? Nobody's going to raise their hand. It's like asking a juror, are you racially biased? Nobody's going to raise their hand at that point either. So it's – I think he dissuaded anybody else from coming forward. And it's – I think the incentive to come forward when the judge is asking you questions like that is very difficult. We have this one juror who did come forward and he didn't do it when the judge asked the first time around. He waited. He sent a note. And the note is very telling. The note basically says that, hey, I listened to – I heard the judge say this and I didn't think in my mind that the judge just made a mistake, you know. And then he sets out the reasons why he didn't think that, you know, this. And it's – But even at the end, he sends out several reasons why it might make a difference to him. But it was always my – I'm not sure it would affect my impartiality, but it may.  Yes. And it seems like he came forward, the judge, based on what I've been able to review and it's the entire transcript here and all the other documents that were submitted, extensively reviewed the – all of the factors, you know, with respect to presumption and beyond a reasonable doubt. And it was – that was wrong. It was a misstatement on his part and, you know, did everything. I think possible to try to cure the error that occurred here. And I guess the question is, under state law, unless – if we find that it's constitutional error, then we look at the prejudice. But if we find that it's the trial error and the court – and we're looking at the state court's decision to determine whether or not it was unreasonable to determine that this trial error was cured, then I just want to find out what you had to say with respect to the latter. I mean, didn't the judge do everything he could and – Well, I don't know if he did everything he could, but I – Well, that was my question to you before. I mean, how do we characterize what he did? If the judge did everything he could, well, then he gets a medal for being a good judge. Yes. But did he do everything he could when he said so in listening to the evidence? It could not be that you were listening to the evidence to support the plea? That would have been wrong? Yes. Is that doing everything he could to give a curative instruction? No. No. I agree with that, Your Honor. But I also don't – I don't want you not to answer Judge McGee's question, but the answer you're giving is on the assumption that he did everything he could, which you disagree with, that assumption. Yes, I do disagree with that. But I also – You should still go ahead and answer the question that if he did do everything he could, which was the assumption of the question, then whatever it was, he should answer. I don't believe that this is a type of error that really – the judge could have cured at that point. I think it could have been cured if somebody had pointed it out earlier in the trial. But like juror number one said, I viewed the trial through that lens. Every one of those jurors viewed the trial through that lens. You can't go back and then ask the jurors to review all the evidence in their mind once again through a different lens. Even though they – twice when asked, they said no, that they didn't view it that way, that they didn't have a problem. They obviously did because they sent a note saying that – Well, one of them did. No, but all – the first note said – Oh, the first time, yes. The first note said, we as a jury heard you say that. Right. No, but the first time they said, we heard you say that, is that what you meant? Mm-hmm. Or, you know – Is that what you said, yes. Is that what you said? Mm-hmm. The second time when the judge addressed them, he said, no, that was just a complete misstatement. Yes. It was my fault. I'm sorry. It should have never been said. He never bled. I don't have any information about him. Mm-hmm. Pleading your – I'm hearing the evidence for the first time, as you are. There's matters that I've considered, but they don't relate. So please, you know, that should have never been said. Did that affect you in any way? That's the first time. Did that affect you in any way? They all – nobody responded. Then we get the juror note the next day, I believe, from one – juror number one, and says, you know what, I've been thinking about it, and it may have affected my ability to be fair, but I'm not sure. Basically, I'm condensing it. Mm-hmm. You have the record as well. And then the judge said, you know, need to dismiss this juror after talking to him, after finding out if he – you know, this had been discussed. Then he asked the jurors, all of them, listen, juror number one had this issue. I want to make sure none of you had this issue. Did any of you have this issue? Mm-hmm. Please, again, let me know, because it would have been wrong for you all to have viewed this through the lens of, you know, that he was guilty or had pled guilty. So please, please let me know if you can't be fair and impartial. Mm-hmm. And then at that point, after having had two chances to respond, no one responded. I understand this was not – you know, this was problematic, but the question is does it rise to the level of either prejudice, if it's a constitutional error, or can we say that the State court's decision was unreasonable on what it decided if it was just trial error. And that's, to me, the analysis that I think we have to go through. I wanted to give you a chance to respond. Mm-hmm. Well, I do think that, once again, the question really isn't whether it's cured or not. I don't think the judge could have done anything at that point, because the truth remains that these jurors, based on their first note that they sent out, saying that we believe – we, as a group, believe we heard – we feel we heard the judge say the defendant is guilty. Now, it's kind of like if there are cases where people are sitting in the courtroom with buttons showing the victim or something like that, where the whole trial has been tainted by that. And you could ask the jury afterwards, well, you have to put that out of your mind. But once the whole trial has been done – I mean, there are some bells that cannot be unrung, and you cannot ask the jury to replay the trial in their mind. The defendant is entitled to a jury who is listening to the evidence, who is fair and impartial. They didn't get it here. I mean, whether they could say later on, oh, yeah, I can put that out of my mind – I mean, they're just doing mental gymnastics at that point. So you're saying it's structural error? Within the context of this case. I don't think any time the judge says the defendant pleaded guilty, but within the context of this case, because we have – it was not cured by the prosecutor or the clerk who heard this, or the judge. They went through the entire trial. We have a jury who said we heard this, so the jurors heard it. We have – and we also have a note from one of the jurors saying that – you know, very articulately saying this is how it affects me. You know, this juror is extremely reasonable, saying I don't know. I don't know – you know, I think I could put it aside, but I don't know subconsciously because I viewed all the evidence through that lens. And I think that's an incredible – I mean, that's a true statement. Every one of those jurors viewed the evidence. And my client is entitled to a jury that is not viewing the evidence through that lens, whether or not the jury later on can say, in response to the judge's question, after juror number one gets kicked off, they get a message that, okay, if I looked at it that way, it's wrong, the judge is going to boot me off the jury. You know, yes, I – and they say that, yes, I can do that. Like Bruton says, there are some bells that can't be unrung. There are certain things that – limitations to our jury system which are just self-evident. And I think this is one of them, where you go through an entire trial thinking one thing and asking them to rethink the whole thing later on. Thank you. Thank you. May it please the Court, Deputy Attorney General Yan Lee for Respondent. The State court here did not contradict or unreasonably apply clearly established Federal law in rejecting Petitioner's claim. The State court did not find constitutional error in this case. On appeal, Petitioner cited and relied on Federal law as well as State law in raising his claim that his rights to a fair trial by impartial jury was violated by the trial court's misstatement. Well, you just heard Mr. Capriola say that the State court did find constitutional   I know that the State court is not applying the Federal law based on that provision. Can you respond to that? Yes, Your Honor. What the State court was doing was applying California standard, explaining the Sixth Amendment right to a fair trial. The State, California Supreme Court standard in relating to where a juror receives extraneous information that might lead to juror bias is to question whether there is substantial likelihood of juror bias. Presumption is presumed, prejudice is presumed, and then the next step is to see whether there was likelihood of juror bias. And that analysis encompasses a harmless error or prejudice analysis to determine a juror bias question. So what the Court said in stating that the error occurred is what Your Honor had stated before, that it was a trial error, that the trial judge did misspeak. That is the incident that the Court was speaking of, not that there was a due process violation, not that that error had occurred. And when the Court stated and the error was harmless, the Court was not stating that it was applying Chapman v. California after finding due process violation, but what the Court was stating was in effect applying California law regarding juror bias and finding this misstatement did not rise to a juror bias. They were arguing that the statement was such that it was inherently biased, that it would cause inherent bias, and the Court rejected that claim. A strong evidence that the Court of Appeal did not reach the constitutional question in that statement was that in his petition for review before the California Supreme Court, petitioners specifically argued to the Court that the Court of Appeal failed to address Chapman v. California because in essence it found that the jury was properly instructed. So that was the argument made, that was the argument petitioner made before the California Supreme Court. It is now here before this Court for the first time that he is arguing, well, no, they did find constitutional error and they did apply Chapman, but they applied it erroneously. So that is the first time that claim has been raised, and I would submit to the Court that that is a misreading of the Court of Appeal's opinion, and that is an inconsistent stance from what he had taken on appeal, and also before this Court in his petition. If it is constitutional error, do you agree then under Brecht we go right to prejudice? If it is, assuming the Court did find constitutional error, which we would not agree, then we would agree that Brecht would apply. However, even under Brecht, petitioner cannot show that there is a reasonable likelihood that but for the Court's misstatement that the result would have been different. He fails to acknowledge the strength of the evidence against petitioner in relating to the false imprisonment charge and the remaining sexual penetration charges in charge. Wasn't the evidence, though, mostly the witness's testimony versus the defendant's? Right. I would also mention it is a credibility. Well, actually, I don't believe the defendant testified. The petitioner did not testify in this case. So it was a matter of assessing the victim's testimony and her demeanor. During deliberation, the jury asked twice for readback of the victim's testimony, so that was crucial in determining their facts. The jury in this case, the petitioner was charged with two counts of sexual penetration. The two counts occurred on a single night, back-to-back. So in one blush, you might think, well, how can they find one guilty and the other count not guilty? But the circumstances arising to the separate counts were very different. Under California law, a defendant's actual and reasonable belief that the victim consented is a complete defense to the crime of sexual penetration. Can we get back to the first issue? And your position is that the State court decided this only under State law? What the State court did was they were presented with a presumption, Your Honor. Can you answer that question? Yes. Did the State court – is it your position that the State court decided this question about the judge's statement solely under State law? No, that is not our position, Your Honor. Pardon me? That is not our position. Oh, so you say he did decide it under Federal constitutional law? California Supreme Court in People v. Boyer has stated that way. I can't – could you just first give me an answer and then explain it? Did the State court decide the question under Federal constitutional law? They rejected it. They found no due process violation in this case. All right. They did consider the Federal constitutional question? Yes. Yes, they did, Your Honor. Okay. And they ruled on it? Yes. Even though it was not specifically stated, the California Supreme Court has explained that when the rejection of a claim, of a State law claim, reasonably leads to the state's claim being not subject to the federal analysis not required, and that is what occurred here. The Petitioner, on appeal, clearly presented his Federal claim as well as his State claim. I mean, his – the Federal law as well as the State law, it was well before the court. In rejecting his only claim of juror impartiality, his denial of right to a fair trial, the court – the State court rejected the Federal constitutional claim by ignoring it. No, they did not ignore it. The California – They didn't mention it, if that makes sense. Right. But the California Supreme Court has stated the separate analysis is not required under that circumstance. Okay. All right. And so under the State law, you went through constitutional error and direct analysis and prejudice. Let's go back to whether or not it is what you say it is under this State – well, the analysis that we have to determine whether the State court determination was unreasonable. What – what do we do with the fact that juror number one did not speak up when the jury was polled on its impartiality the first time? Isn't it unreasonable to rely on the trial court's second polling of the jury? Or why would we rely on the second polling of the jury? The – the juror number – the first – let me just go back to the timeline. The juror was – they retired to deliberate on a – on Wednesday, late Wednesday, and immediately came back with a note saying, we think we heard – we think we heard the court say he plead not guilty. Is this true? So first of all, the court – the jurors never said that they heard it, but they think they heard it. And then the court brought everyone out, barred them extensively, asked them, polled them numerous times, went over the constitutional rights that petitioner was entitled to, explained to the – explained to the jurors that the court had made a mistake, that it was the court's error, that it was wrong of him to say it, that he misspoke. At the end of the day, nobody – none of the jurors had raised their hands about any of their possible biases at that point. They had an extra day before the next court day, which was – which was on a Friday. So on the Friday morning when they came back to court, the juror number one, he brought the note to the court stating, well, I think I might have these biases, but I'm not sure. I think I can still be fair, but I'm not sure because they're – they might be somewhere in my subconscious mind. And I did – I viewed the – I viewed the evidence thinking that he was guilty, so maybe that would play, but I don't know. And he left it up to the court. So after further – further of idea with juror number one, the court dismissed him, brought everybody back. And at that point, the court told the jurors that it had – that the court had made a mistake, that it was the court's error. And he explained – at that time, the jurors already knew why juror number one was being called off, because he had already told them, and I had these feelings. I gave the note to the court. So they were already aware of it. And at that time, when the court again told them that it was the – it was his error, he also commended juror number one, saying that he was very honest in forthcoming about his feelings. So I think that would open up to – And the rest of what he said was the defendant never pleaded guilty, never. So as in – so in listening to the evidence, it could not be that you were listening to the evidence to support the plea. That would have been wrong. It's a familiar-sounding phrase. That would have been wrong. That is a point of view you could not have in listening to the evidence, because you were supposed to be fair and impartial throughout the trial, including the time which you were listening to the evidence. So he told them that they – in order to be fair and impartial, they could not have listened to it the way the other juror did. They could not have taken his statement as true and viewed the trial in that light because that would have been wrong. Is that clear to you? The court's – Is – I'm sorry. Go ahead. Well, that's what he told the jurors. Yes. Yes. Okay. But that statement does not – does not put the onerous forthcoming to the jurors. The court was very clear that if they had such feelings, it was the court's fault, that it was the court's fault for their having such feelings if they did have any. And I don't – I don't – But he told them that they could not have had that view while listening to the trial. I think that emphasizes – Because they're supposed to be fair and impartial. Yes. I think that emphasizes what the court was trying to say was the importance of jury impartiality in this case. Well, it may have been what he was trying to say, but what he told them is they couldn't have had that view when listening to the evidence.  The question is, did they have that view when listening to the evidence? And he told them they couldn't have had it. And all the jurors, when the court polled each juror separately, they all said they did not have that view. They did not share their view. Well, after being told – after being told by the judge that they couldn't have had it, because then they wouldn't have been fair. But it was not – but the court also said it was okay for them to come forward, that the juror number one was being very honest with his feelings, that the court was appreciating that. That there was no trying to keep them off from being on the jury. They were – he was – the court was giving every opportunity. And I think the – You know, if I said to you, you couldn't have been a fair prosecutor, now come forward and tell me, were you really? Well, that's not all – that's not what all the courts said. If you had told me, Your Honor, that for some reason it was your fault, that I was not a good prosecutor, would you agree that, you know, you have these feelings that would make it different than just saying it's your – you're a bad prosecutor? You don't think I could have found a better way to tell you that than this judge did in his curative instruction that couldn't have been better? I don't know. I mean, the Petitioner does not suggest any other – no one had any – in trial, no one had any other suggestions as to what other questions the court could have asked, how else the court could have approached this subject. Well, it depends, in my view, not necessarily anyone else's, that it's not the judge we're worried about in these cases. It's the defendant or the prosecutor, mainly the defendant, that we should worry about his rights, not whether the judge made a mistake, which may be totally understandable. But we're worrying about what the effect is of what he said on the jury. I think the Supreme Court law is clear that the mere fact that a juror might have preconceived notions about guilt and innocence of the accused is not sufficient to overcome the presumption of juror impartiality. If the juror can lay aside those impressions and judge the evidence – You're talking about cases where you select a jury, where the juror says, well, sure, I can put aside the fact that I don't believe in capital punishment. Or that I do believe in it. And then says, but I'm going to be really fair. The Supreme Court says, yes, you can put it aside. You have a case that the – have a case in which the Supreme Court said that the jury can put aside the way it heard the case, thinking that the man was guilty, instead of giving him the presumption of innocence? I don't know that there's any – I'm unaware of any cases where this specific scenario had occurred in another occasion. But I think it's sort of what happened here could be sort of akin to where there's a pretrial publicity regarding a case where there might have been some media information out there about – maybe there's a false confession out there about a petitioner or about a defendant that the jurors might be aware of. Well, then he already confessed, and why are we having this trial? Well, it's your job, it's your duty to be impartial, to be – to presume his innocence regardless of what he said, and can you lay aside whatever you heard outside of this courtroom, whatever confessions that, you know, you say that he might have made, can you lay that aside and be – and give his fair trial if the juror says, yes, I don't know there's any more that a trial judge can do at that position – at that point to assess the bias of that juror? Okay. Thank you. Thank you. Just a couple of quick points. With regard to what the state court found, with regard to error, this is what they said. It's on page 29 of the excerpt of the record. According to Williams, the court's misstatement was error insofar as it undercut his right to a fair and impartial jury that was correctly instructed on the burden of proof. He contends that despite these steps, the court's error could not be cured because, viewed objectively, it was so prejudicial that it was inherently and substantially likely to have influenced the juror. We agree that error occurred, but conclude it was cured and was, therefore, harmless under the circumstance. So I think they're definitely finding federal constitutional error. They're talking about the defendant's claim is that he was denied his right to a fair and impartial jury, and we agree error occurred, but it was harmless because it was cured by what happened later. With regard to the Attorney General's point as to the evidence in this case essentially being overwhelming, this was a close case, and we know that because the jury returned a mixed verdict in this case. So this was not a slam dunk for the prosecution. The fact that the jury returned a mixed verdict, doesn't that cut both ways? It does. Does it also say that the jurors really could be fair and unreasonable? I mean, they all didn't presume that he was guilty. They would have found him guilty on all the charges otherwise. We don't know what the effect was. I mean, but we do know that at least that this was not a slam dunk in the jury's mind. That's what we know, I think. Other than that, I think we're speculating as to what happened. But I think we do know that this was not a slam dunk in the jury's mind. And if there was — Was there only two witnesses? There were only two witnesses, yes. It was a day-and-a-half trial. And was the defendant testifying? He did not testify. Who were the witnesses other than the victim? You know, I don't recall. It was the victim and then one other witness, and I don't know that off the top of my head. Maybe the Attorney General does, but I don't know. Did the second witness have to do with the phone call? I don't know. I don't recall, Your Honor. Okay. Thank you. Just one last point. And the judge did say one thing that I think is very telling when he was talking to the jury, the 11 jurors who remained and the alternates. And what he said was, he said, you are supposed to be fair and impartial throughout the entire trial, including the time in which you are listening to the evidence. And I think that's an accurate statement, including the time when you're listening to the evidence. And in this case, that didn't happen. And with that, I'll close. Thank you. Thank you. The case just argued is submitted. The next case for argument is United States v. Hardwich. United States v. Hardwich.
judges: REINHARDT, NOONAN, MURGUIA